1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9   NORA PULIDO,

10          Plaintiff,              No. CIV S-05-0678 FCD JFM PS

11      vs.

12  UNITRIN, INC.,[1] etc., et al.,

13          Defendants.             FINDINGS AND RECOMMENDATIONS

14  _____/

15  KEMPER AUTO AND HOME
    INSURANCE COMPANY,

16
            Defendant and
17          Third Party Plaintiff,

18      vs.

19  JOEL VELAZQUEZ, and
    ROES 1-100,

20
            Third Party Defendants.

21  _____/

22          The motion of Kemper Home and Auto Insurance Company for summary

23  judgment came on regularly for hearing January 25, 2007.  Plaintiff appeared in propria persona.

24  Peter A. Meshot appeared for defendant Kemper Home and Auto Insurance Company.  Upon

25  _____

26      [1]  Defendant Unitrin, Inc. was dismissed by the district court on June 16, 2006.

1

1  review of the motion and the documents in support, upon hearing the arguments of counsel and

2  good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

3          Defendant's motion for summary judgment, filed November 20, 2006, was

4  noticed for hearing on December 21, 2006.  Plaintiff Nora Pulido, proceeding pro se, failed to

5  timely file an opposition and hearing on the pending motion was continued to January 25, 2007.

6  Plaintiff was granted an extension of time to January 18, 2007 to file opposition.  Plaintiff was

7  cautioned that failure to file opposition and appear at the hearing would be deemed as a statement

8  of non-opposition to the granting of the motion.  Plaintiff has filed no opposition, although court

9  records reflect plaintiff was properly served with notice of the continued hearing date at

10  plaintiff's address of record.  Plaintiff appeared at the hearing but tendered no substantive

11  opposition to the motion.

Plaintiff's Complaint

13          Plaintiff, proceeding pro se, filed a complaint alleging breach of contract and

14  breach of the covenant of good faith and fair dealing against her home and auto insurance

15  policies for her claim concerning theft and destruction of her 2000 F150 truck.

16          Plaintiff asserts diversity jurisdiction.  Plaintiff is a citizen of California.

17  Defendant Unitrin, Inc., is a corporation whose corporate offices are located in Chicago, Illinois.

18  Plaintiff alleged defendant Unitrin Direct Auto Insurance and Kemper Auto and Home are

19  subsidiaries of defendant Unitrin, Inc.  Plaintiff sought over $75,000.00 in compensatory and

20  punitive damages, plus costs and interests incurred herein.  Venue is proper as plaintiff resides in

21  the Eastern District of California and the allegations at issue took place in this district.

22  I. Summary Judgment Standards

23          Summary judgment is appropriate when it is demonstrated that there exists no

24  genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter

25  of law.  Fed. R. Civ. P. 56(c).

26  /////

1    Under summary judgment practice, the moving party

2    [A]lways bears the initial responsibility of informing the district
     court of the basis for its motion, and identifying those portions of
3    "the pleadings, depositions, answers to interrogatories, and
     admissions on file, together with the affidavits, if any," which it
4    believes demonstrate the absence of a genuine issue of material
     fact.

5

6    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

7    burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

8    in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

9    file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

10   upon motion, against a party who fails to make a showing sufficient to establish the existence of

11   an element essential to that party's case, and on which that party will bear the burden of proof at

12   trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

13   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

14   circumstance, summary judgment should be granted, "so long as whatever is before the district

15   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

16   satisfied."  Id. at 323.

17        If the moving party meets its initial responsibility, the burden then shifts to the

18   opposing party to establish that a genuine issue as to any material fact actually does exist.

19   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

20        In attempting to establish the existence of this factual dispute, the opposing party

21   may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts

22   in the form of affidavits, and/or admissible discovery material, in support of its contention that

23   the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

24   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

25   suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.

26   Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

1  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

2  the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

3        In the endeavor to establish the existence of a factual dispute, the opposing party

4  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

7  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

8  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

9  committee's note on 1963 amendments).

10        In resolving the summary judgment motion, the court examines the pleadings,

11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

12  any.  Rule 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at

13  255, and all reasonable inferences that may be drawn from the facts placed before the court must

14  be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

15  Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam).  Nevertheless, inferences are not drawn out

16  of the air, and it is the opposing party's obligation to produce a factual predicate from which the

17  inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.

18  Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

19        Finally, to demonstrate a genuine issue, the opposing party "must do more than

20  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

21  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

23  II.  Undisputed Facts

24        1.  Plaintiff Nora Pulido, with her boyfriend, Joel Velazquez, purchased a 2000

25  Ford F150 truck on July 7, 2002, and both were registered owners.  (Pl.'s June 18, 2003

26  /////

1   Deposition appended as Defts.' Ex. A [Docket No. 53] (hereafter "Pl.'s Depo.") at 31; Defts.'

2   Ex. C [Docket No. 52].)

3          2.  In order to purchase the vehicle, Mr. Velazquez traded in his truck as part of

4   the deal.  Initially, plaintiff and Mr. Velazquez were going to have the vehicle purchased

5   exclusively by Mr. Velazquez.  On the advice of the salesperson, the vehicle was put in the name

6   of Ms. Pulido to secure a lower interest rate.  (Pl.'s Depo. at 34-35.)

7          3.  Plaintiff and Mr. Velazquez moved in together in October of 2002, but at least

8   from the time they bought the F150 truck Mr. Velazquez would frequently stay with Ms. Pulido.

9   From the time of purchase of the truck in July of 2002, both persons operated the vehicle.  (Pl.'s

10  Depo. at 19, 20; 36-41.)

11         4.  After purchasing the 2000 F150 truck, plaintiff called different insurance

12  companies to find out how much it would cost to obtain an automobile policy of insurance.  She

13  inquired about getting insurance with Mr. Velazquez listed as a driver and determined it would

14  cost approximately $1,000.00 more to include him on the policy.  (Pl.'s Depo. at 41-42.)

15         5.  Plaintiff and Mr. Velazquez talked about the cost of insurance and jointly

16  decided they would not list him as a driver on the policy.  (Pl.'s Depo. at 42-43.)

17         6.  Unitrin Direct Insurance Company issued an insurance policy to plaintiff

18  which went into effect on July 24, 2002.  (Pl.'s Depo. at 1, 2, 58, 60; Defts.' Ex. B [Docket No.

19  54].)

20         7.  The underwriting department for Unitrin Direct Insurance Company has found

21  that if Joel Velazquez had been listed on the application, he would have been an acceptable risk.

22  However, he has 8 points on his driving record, which it the maximum allowable.  The policy

23  premium would have been an additional $1,578.00.  (Meshot Decl., appended as Ex. E [Docket

24  No. 48].

25  /////

26  /////

1    8. Plaintiff knowingly misrepresented and concealed the fact that Mr. Velazquez

2  would be driving the vehicle.  She did so for the express purpose of obtaining a lower insurance

3  premium.  (Pl.'s Depo. at 46-49.)

4    9. After purchasing the subject vehicle, plaintiff spoke with a sales representative

5  on behalf of defendant Unitrin regarding the purchase of auto insurance.  Among other things,

6  she advised the defendant she would be the only driver of the vehicle, which plaintiff

7  acknowledges was a false statement to the defendant.  (Pl.'s Depo. at 46-49.)

8    10. On April 7, 2003, the Ford 150 truck was reported stolen and found burned.

9  (Defts.' Ex. C.)

10    11. Plaintiff presented a claim to defendant following the theft of the subject

11  truck.  Based upon plaintiff's material concealment and misrepresentation, defendant rescinded

12  the subject insurance contract.  (Defts.' Ex. D [Docket No. 51].)

13    12. Kemper Auto and Home Insurance Company has never issued a policy of

14  insurance to the plaintiff; plaintiff applied for and received the policy from Unitrin Direct

15  Insurance Company.  (Meshot Decl.; Pl.'s Depo. at 58-60.)

16    13. Kemper Auto and Home Insurance had its own identity, license and authority

17  to underwrite insurance in California, separate from all other insurance companies, including

18  Unitrin Direct Insurance Company.  (Meshot Decl.)

19    14. Plaintiff failed to accomplish service of process on Unitrin Direct Insurance

20  Company and it was dismissed from this action by the district court's order filed June 16, 2006.

21  III.  Analysis

22    California Civil Code § 1689(b)(1) provides that a party to a contract may rescind

23  the contract if his "consent . . . was given by mistake, or obtained through duress, menace, fraud

24  or undue influence, exercised by or with the connivance of the party as to whom he rescinds."

25  (Id.)  Three factors are reviewed in determining whether an insurance company has the right to

26  rescind a policy, which are: (1) that the applicant made a misrepresentation; (2) that the

1  misrepresentation was material; and (3) that the applicant knew that he made a material

2  misrepresentation.  Trinh v. Metropolitan Life Ins. Co., 894 F.Supp. 1368, 1372 (N.D.Cal.1995).

3  The materiality of a misrepresentation in an insurance application is a question of law.  Security

4  Life Insurance Company of America v. Meyling, 954 F.Supp. 1421 (E.D. Cal. 1997).  Courts

5  have looked to two different tests in determining if a misrepresentation is material.  "Under the

6  first test, '[m]ateriality is determined by the probable and reasonable effect that truthful disclosure

7  would have had on the insurer in determining the advantages of the proposed contract.'  [cites

8  omitted.] Thus, if the insurer would not have issued the policy but for the misrepresentations, the

9  misrepresentations are considered material."  Trinh, 894 F.Supp. at  1372.  Under the second test

10  of materiality, "[t]he fact that the insurer has demanded answers to specific questions in an

11  application for insurance is in itself usually sufficient to establish materiality as a matter of law."

12  Id. at 1372, 1373; Cohen v. Penn Mut. Life Ins. Co., 48 C2d 720, 726 (1957)("The fact that the

13  insurer put the questions in writing and asked for written answers was itself proof that it deemed

14  the answers material.")  No causal connection of the misrepresentation on the application to the

15  loss is required for rescission.  Torbensen v. Family Life Ins. Co., 163 CA2d 401 (1958).  If the

16  misrepresentation affected the premium (it would have been higher), the insurer is entitled to

17  rescind the insurance policy.  Old Line Life Ins. Co. of America v. Superior Court (Silvera

18  Trust), 229 CA3d 1600, 1604 (1991).

19          Here, it is undisputed that plaintiff intentionally failed to disclose that Mr.

20  Velazquez would be driving the vehicle and did so with the sole intention of reducing her

21  insurance premium.  On the insurance application form, plaintiff answered the question "are all

22  operators of your vehicle listed above?" by checking the box "Yes," even though Mr. Velazquez'

23  name had not been listed on page two of the application.  (Defts.' Ex. B.)  Page seven of the

24  application states "all operators of my vehicle are listed on this application."  (Id.)  Page eight

25  required plaintiff to declare that "no persons, other than those listed on the front of this

26  /////

1  application, regularly operate the vehicle described on this application." (Id.) Plaintiff signed the

2  application. (Id.)

3        It is undisputed that plaintiff was aware that her insurance premium would have

4  increased by at least $1,000.00 and plaintiff has offered no evidence to refute the defendant's

5  evidence that the premium would have been an additional $1,578.00. Plaintiff was aware that

6  Mr. Velazquez would be driving the vehicle, and, because of the higher premium, should have

7  been aware he was a poor insurance risk.

8        These undisputed facts demonstrate that plaintiff made a misrepresentation, that

9  the misrepresentation was material; and that plaintiff knew that she made a material

10  misrepresentation. In addition, plaintiff has offered no evidence to refute the materiality of this

11  evidence.

12        Accordingly, the contract of insurance was properly rescinded, and plaintiff's

13  claims concerning this policy cannot lie as a matter of law.

14        Plaintiff's cause of action for breach of the covenant of good faith and fair dealing

15  fails as well. "To prevail on a claim that the insurer has breached the implied covenant of good

16  faith and fair dealing, the insured must show that (1) the insurer withheld benefits due under the

17  policy and (2) the reason for withholding the benefits was unreasonable or without proper cause.

18  Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246, 255 (1990)."

19  Sullivan v. Allstate Ins. Co., 964 F.Supp. 1407, 1415 (C.D.Cal.1997). Because Unitrin Direct

20  Insurance Company's decision to rescind the vehicle's insurance policy was based upon

21  plaintiff's material misrepresentations, there cannot be any bad faith in its refusal to pay benefits.

22  See, e .g., Kopczynski v. Prudential Ins. Co., 164 Cal.App.3d 846, 849, 211 Cal.Rptr. 12, 14

23  (1985); State Farm Fire and Casualty Co. v. Martin, 872 F.2d 319, 321 (9th Cir.1989).

24        Good cause appearing, defendant Kemper Home and Auto Insurance Company is

25  entitled to summary judgment.

26  /////

Third Party Complaint

On February 15, 2006, defendant Kemper Auto and Home Insurance Company filed a third party complaint against plaintiff and her boyfriend, Joel Velazquez, seeking indemnification and apportionment of fault should plaintiff prevail in her complaint.

At the hearing, counsel for defendant Kemper requested that the third party complaint be voluntarily dismissed in the event that the court granted the motion for summary judgment.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Kemper Home and Auto Insurance Company's November 20, 2006 motion for summary judgment be granted.

2. Defendant Kemper Home and Auto Insurance Company's third party complaint be dismissed.

3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 29, 2007.

UNITED STATES MAGISTRATE JUDGE

/001; pulido.msj

9